| 75 | 417 |
| p75 | 423 |
| 75 | 424 |
| p75 | 858 |

## THE STATE OF KANSAS v. JOHN D. TAYLOR.

No. 15,135   (89 Pac. 672.)

### SYLLABUS BY THE COURT.

INFORMATION—*Verification—Personal Knowledge of Prosecutor.* In prosecutions under the prohibitory liquor law, when the complaint is verified positively by the prosecuting attorney, no inquiry can be made touching the source or extent of his knowledge or the information upon which such verification is based; nor can he be required to file in court or exhibit to the defendant affidavits or other testimony taken by him previous to filing the complaint.

27—75 KAN.

Appeal from Miami district court; WINFIELD H. SHELDON, judge. Opinion filed March 9, 1907. Affirmed.

*Fred S. Jackson,* attorney-general, and *John S. Dawson,* assistant attorney-general, for The State.

*Frank M. Sheridan,* and *Mulvane & Gault,* for appellant.

The opinion of the court was delivered by

PORTER, J.: This is an appeal from a conviction under the prohibitory liquor law. The information contained thirteen counts charging sales, and one for maintaining a nuisance. Appellant was convicted under one count charging a sale, and also under the nuisance count.

It has been difficult to ascertain clearly the errors complained of. Appellant's brief disregards the provisions of rule 10 and contains no specification of errors, but refers us to the specifications set forth in the petition in error. The latter contains twenty-nine separate specifications of error. The purpose of the requirement that the errors claimed shall be specified is that the contentions of the parties may be narrowed, and the labors of the court and opposing counsel to some extent lessened. In this case the specifications cover three pages of the record. They embrace every ruling made during the progress of the trial, and include a number which have reference solely to counts upon which the appellant was acquitted. They are so drawn out and amplified that they serve to bewilder and confuse instead of to aid either the court or counsel.

Many of the contentions of the appellant are not deemed of sufficient importance to require comment. We will discuss those upon which he appears most strongly to rely for a reversal.

The information was verified positively by B. L.

The State v. Taylor.

Sperling, assistant attorney-general for Miami county. It is claimed by appellant that at the time the information was filed the assistant attorney-general had no personal knowledge of the offenses charged but depended wholly upon the information contained in sworn statements taken by him. This was brought to the attention of the court by affidavits of the appellant in support of a motion to quash, a motion that the information be made more definite and certain, and a motion to require the affidavits to be filed in court, as well as by a motion asking the right to inspect the written testimony. The assistant attorney-general was placed upon the stand, and upon examination admitted that he had no personal knowledge of the acts charged, and that the only information he possessed was that procured in the form of affidavits taken by him prior to the filing of the complaint.

All these motions were denied and error is alleged in each ruling. It is contended that an information can only be verified positively where the prosecutor has personal knowledge of the charges; that where it is made to appear to the court that the prosecutor has no personal knowledge of the truth of the charges the positive character of the verification disappears, and it then stands as though made upon information and belief; that at once it becomes the right of the accused to have the written evidence upon which the prosecutor based his information filed in court; and that the state is then confined in its proof to the offenses specified therein.

Most of the cases cited in support of this contention are those wherein the information was verified on information and belief. These, of course, are not in point. We can conceive of no reason why the prosecutor in this class of cases may not verify a complaint positively if he chooses so to do, and base his verification upon information obtained from others. He does this in an information charging murder or other felony,

where he rarely has personal knowledge of the facts.

The provisions of section 2473 of the General Statutes of 1901 are that where a county attorney has examined witnesses on oath with reference to violations of the prohibitory liquor law he may file the statements with the information, and when so filed they, together with the information verified by him on information and belief, shall have the same effect as if the information had been verified positively. Appellant argues that this provision was inserted in the prohibitory act solely for the benefit of the accused. We think its primary purpose was to provide for the filing of informations in cases where the county attorney might hesitate to verify positively, to the end that the law might more readily be enforced. True, it has been held that when the prosecution is begun in that way the state is confined in its proof to the offenses specified, and in such cases defendant has been said to be entitled to the benefit of the statements in the preparation of his defense. (*The State v. Whisner,* 35 Kan. 271, 10 Pac. 852; *The State v. Lawson,* 45 Kan. 339, 25 Pac. 864.) But there is no attempt or purpose in the act to destroy or limit the effect of an information or complaint filed in the usual and ordinary way and verified positively.

In *The State v. Huffman,* 51 Kan. 541, 33 Pac. 277, the information was verified positively, and defendant filed his plea in abatement, supported by an affidavit to the effect that the county attorney had no personal knowledge of the alleged offenses but acted solely upon information contained in sworn statements of witnesses, which statements were in his possession, and which he refused to file in the cause. To this plea the state demurred. The trial court held the plea good and quashed the information. On appeal by the state the cause was reversed. In the opinion the court said:

"We are unable to perceive any good reason why a county attorney may not, if he feels warranted in so doing, verify an information charging a violation of

The State v. Taylor.

the prohibitory liquor law, as well as any other offense, positively, and why such information, so verified, is not sufficient." (Page 543.)

The trial court's ruling on these various motions was correct. There is no authority for placing on the witness-stand the prosecuting attorney and subjecting him to an examination in reference to the knowledge he acted upon in verifying the information positively. When the information is verified positively the same rule obtains as in ordinary prosecutions, and no inquiry can be made touching the source or extent of the prosecutor's knowledge.

Over appellant's objection the attorney for the state was permitted to ask some of the state's witnesses whether they had not in their examination before him testified to having bought liquor of appellant; and a witness identified his signature to one of the written statements. The court refused to order the attorney for the state to allow counsel for appellant to examine this statement. The statement itself was not offered in evidence.

Some of the witnesses were unfriendly to the state. The extent to which witnesses who appear to be unfriendly may be cross-examined by the party producing them rests always in the sound discretion of the court. We find no abuse of discretion or error in the rulings complained of.

Fifty instructions were asked by appellant, all of which were refused, and the refusal of each is assigned as error. None of these instructions is printed in the brief, as required by rule 10. Fourteen of them were predicated upon the proposition that appellant could not be convicted of any offense of which the assistant attorney-general did not have actual or personal knowledge. As the information was sworn to positively, none of these instructions was proper. A number of others asked were to the effect that the jury should receive with great care and caution the testi-

mony of any witnesses of the state who were detectives, or spotters, or who hunted up testimony of sales of liquor made by defendant in order to testify against him. Several witnesses for the state testified that they had contributed money to aid in prosecuting violators of the prohibitory law; and some of them had purchased liquor of appellant with a view of furnishing testimony against him.

The case of *The State v. Snyder*, 8 Kan. App. 686, 57 Pac. 135, cited as authority for the contention that it was error to refuse these instructions, is not a parallel one. There the state relied solely upon the evidence of hired detectives, brought from a distance, and it was said that where the state relies solely for a conviction on the testimony of professional detectives employed by the prosecuting attorney a similar instruction is proper and it is error to refuse it.

In the case at bar none of the witnesses was a professional detective; none was paid or to be paid in the event of conviction. Instead of being paid for their time and work in securing evidence, they contributed money to aid the prosecution. The most that can be said is that they were interested witnesses; not more so, perhaps, than the injured person who testifies in any criminal action. The court gave the usual instructions with respect to the weight and credibility of all the witnesses, and the jury were instructed to consider the interest of any witness in the result of the trial, and this, we think, under the circumstances of this case, was sufficient.

There was no error in the refusal of the instructions asked, many of which were upon matters embraced in the instructions given. The latter, we think, fully protected the rights of appellant. There was ample evidence to warrant the conviction.

The judgment is affirmed.